The next case on our calendar for argument this morning is Freiberg v. Stuart, number 1935-93. Mr. Voetra, I'm sorry that I didn't think to move your argument first so you wouldn't have had to sit for quite so long, but I'm interested to hear your argument. I hope you'll proceed. Mr. Voetra, are you there? Mr. Grant? Mr. Ryan? Yes, Your Honor. Richard Grant for the Codefendant Authorities of the Stuart Brothers. Can you hear me now? This is Kenneth Voetra. Yes, Mr. Voetra. Sorry, yes. And my apologies, gentlemen, for not having thought. I didn't really expect the argument to be going quite so long or I would have moved you first. I had mentioned I taught that course for 20 years, so it was very interesting to me. Oh, good. All right. All right. Anyway, I enjoyed it a lot. If I may, my name is Kenneth Voetra. If it may please the Court, I represent the plaintiff, Richard Freeburg, in this case, and this is our appeal from the granting of summary judgment in the district court. To open, I think the focus on this appeal is the issue of whether or not there was a genuine material issue of fact as to whether there was probable cause to institute the underlying action and to prosecute the underlying action. The matter was heard in the district court, and the interesting facts in this case is that the underlying litigation was a prolonged litigation and it had visited the Connecticut Appellate Court twice and the Supreme Court once. And in the course of the case, it became readily apparent that the plaintiffs in the underlying action, defendants here, testified in the reports of the accountant that they sued. So Mr. Freeburg was hired as an accountant for the fiduciary of an estate, and the reports were never read. The reports were given to the fiduciary, and I understand the testimony may have been that they were given to the defendants, but they were never considered. And that was clear through the appellate court, through the Supreme Court, and the Supreme Court decision is based in large part on the fact that they never considered it. What's also interesting in the case, as opposed to an ordinary accounting malpractice case, the malpractice action was based solely on the then plaintiffs, the defendants here, reliance on reports prepared by my client, Mr. Freeburg. And from the beginning of the case, the testimony was clear that they did not. And the fraud claims that were raised in the state court were also based on reliance on the reports of the accountant. So as the Supreme Court in Connecticut noted, that it's an unusual complaint, it's an unusual way to approach accounting malpractice, but it was all exclusively based on reliance. And the fraud claim by law is based on reliance, because under Connecticut law, fraud is really intentional misrepresentation, and it requires an affirmative statement of fact, which is false. And so, in this case, from day one, the plaintiffs knew they could not establish that they relied on the Connecticut Supreme Court. And the two intermediate appellate court judges found probable cause for the suit, you know, and presented in the ultimate judgments, and we've had divided courts all along here. Doesn't that just, of itself, establish that there was enough to proceed? Well, and obviously, that's one of the... Sure, no, no, it's a key when you look at the decision of the Supreme Court. First of all, you have to note that even Justice Everly did not disagree that they had not read the reports. His opinion was that you look at it in a broader context, and that reliance is always an issue of fact. And that's basically what the appellate court decided also. But the appellate court isn't deciding probable cause. The Supreme Court isn't deciding probable cause. What they're deciding is whether or not there's a genuine material issue of fact. And, well, Your Honor could say, well, there you go. Is that something that the attorney is entitled to rely on? For a couple reasons, I don't think they are. First of all, the attorney and the client had knowledge that they could not establish the element of reliance. They pled a complaint based on reliance, which they knew not only that they could not prove, they actually had evidence which was contrary to the conclusion. And so, to that extent, I don't think you can separate the factual analysis from the dissent in the Supreme Court. And, of course, the appellate court was reversed by the Supreme Court. And I don't think as a result... In fact, if you look at the Supreme Court decision, they actually specifically note that the appellate court didn't even consider this issue, didn't even consider whether or not there was actual reliance. And so, as a result, the same issues weren't considered. And two, when you look at it, at the end of the day, it is a dissent. And the dissent isn't law. It isn't something that carries a collateral estoppel value. It may be of interest, and it is only maybe a fact, but it is not a conclusion. And remember, we're in a summary judgment stage where the issue for me is whether or not there was a genuine issue of material fact as to whether or not there was probable cause. And the evidence that the plaintiff has and offered in contrary to the summary judgment was that, in fact, they testified under oath that they've never read the report. So, I guess the first thing I wanted to ask is the evidence about not reading the report. So, I take it that William says he didn't read the report. Is there similar testimony from... Jonathan. From Jonathan? Yes, there is. And even more so, the Supreme Court concludes it. Can you just give me a... Yeah, if you take a look at the... Let me do this. In the Supreme Court decision, in the reliance section, and if I can, I can get you the page in the appendix. I'm so sorry. That's the best place for me to look. That's fine. So, I'll look at the reliance section. Yeah, the reliance section. Let me send... So, I think from reading the Williams summary judgment papers, I think some of what he's arguing about reliance is that he relied in a slightly different way. So, not that he personally read and considered the reports and relied on them in that sense, but that the facts that your client had been hired and he understood your client to be a representative of everybody's interest, not just Kenneth's, led... They relied on the facts that an accountant had been hired as a basis for not seeking certain relief earlier on in the case. I agree, Your Honor. I think it's a general reliance that he's talking about that there's an accountant involved now. Right. So, I guess my question is, maybe that's a valid kind of reliance, maybe it's not, but why isn't there at least probable cause under that standard to say, I relied in that sense, in the sense that I didn't take action because I understood there was an accountant involved? Well, interestingly, that could, in some circumstances, support probable cause if that was the lawsuit that they brought. But the problem is that's not the lawsuit that they brought. They sued for the false reports. I bounced this around the other day in my mind. I thought about, what if page two of Mr. Freeberg's first report said, by the way, Kenneth is stealing money and he took $1,287,000. The stewards would never have known that because they never read the reports. And so, in terms of the support, it doesn't support probable cause for the complaint they brought. And I do know in one of the defendants' briefs- So, isn't that still the reason that they became suspicious and hired the forensic accountant? As Judge Kovach was pointing out, they delayed pursuing removal. These suspicions reasonably developed and they had to hire a forensic accountant to determine what was going on. Well, they didn't develop the suspicion from the reports because they hadn't considered the reports. They had their suspicions before Mr. Freeberg was hired because they had instituted a lawsuit challenging the conduct of Kenneth. And so, their suspicions were aroused anyway. And so, it didn't have anything- It doesn't appear that there's any evidence that suggested anything to do with a report prepared by Mr. Freeberg. Now, they may have thought that Mr. Freeberg had a duty to run to them and tell them something's going on. That doesn't appear to be the case. And if they were going to make that claim, if we break down the complaint, first of all, on the fraud claim, which is essentially intentional misrepresentation, there is no statement they can identify that was a false statement. And so, even if you accepted the dissent analysis in the Supreme Court, it doesn't answer the question as to fraud because they've never identified a statement made that they relied on. Can I ask you a question on that? Sure. But in great generality, let's take another suit and there are five claims made, all right? And four of the claims are- have reasonable grounds and probable cause. One is fanciful. The fifth one is fanciful. Can you bring- Can you challenge it as vexatious litigation if one of them- If the claim, not the entire lawsuit, but the claim, one of the claims is fanciful? The answer is yes. And although that issue I didn't- I don't think was briefed by anybody. In that case, the law is pretty well established in Connecticut that you look at- it's a claim by claim basis. I find that- I find that- I'm not disagreeing with you. I haven't counter-researched it, to be honest with you. But it's- the number of- in my experience, both as a lawyer and a judge, the number of times you see a rather baloney claim tacked on at the end of a complaint, I'm interested to find out that that can give rise, at least in Connecticut, to a claim of vexatious litigation. Yes. And it's my recollection of the law that, in fact, you can't- I know I've read cases that have said that. But I will tell you, Your Honor, I was troubled in the same way because I'm going, well, in my practice as a lawyer, your job is to bring all the claims you bring legitimately for your client. And I understand that. But however, in fact, this ties into what I was about to say before you asked the question, which is in one of the briefs in opposition, the point was raised that, well, you know, there were other claims that they could have brought that would have survived summary judgment. And it's not a defense to say, but we had- you know, maybe this didn't have probable cause, but I had some other good ones. And so it should be OK. So it really is a claim by claim analysis. OK. You have reserved three minutes for rebuttal. Yes, I did. Thank you. Sure. Well, we'll hear from counsel for the Stewarts. Thank you, Your Honor. My name's Richard Grant. I represent the defendant at Belize, William and Jonathan Stewart. Two issues in this case, as I see it. One is whether there was probable cause for the plaintiffs, excuse me, for my clients to sue Mr. Freiberg. And the second is whether or not my clients have a legitimate defense of reliance on counsel with respect to the drafting of the particular action in this case. There is both a factual and legal basis for my client's claims against Mr. Freiberg. There are essentially undisputed facts that Mr. Freiberg assisted Mr. Stewart, the executor of the estate, in misappropriating funds to his personal use. Mr. Freiberg admitted with depo that he routinely reclassified personal expenses of Mr. Stewart as business expenses of the executor or as loans. He admitted that he had two sets of financial statements, that he would use one set when applying for a bank loan. It was very forthcoming about how the executor was basically living off of the estate to the tune of approximately $90,000 a year of personal expenses being made. And he said that in his financial reports to the beneficiaries, he did not, he was not forthcoming with this information, that essentially everything in the financial statements was a way of hiding or concealing from the beneficiaries of the estate what was going on. Now there's emphasis, your honors, that during this entire period, and this was prolonged litigation, my clients were represented by counsel. The co-defendant counsel, Ms. Curry, was reading these reports on their behalf, even if they didn't directly read them themselves. And she is the person who hired the forensic accountant, Mr. Dempsey, and she testified to this, in order to figure out what was going on, because these reports were designed to hide information. They were designed to obfuscate and make it difficult to understand, penetrate into the darkness, what was going on. And ultimately, Mr. Dempsey, the forensic accountant, made several findings, which were instrumental in the resolution of the underlying estate action, including the preparation of two separate sets of financial statements, failure to account for all the transactions of the estate, reclassification of personal expenses as business expenses, loans, and also the creation of a fictitious entry on the estate's books, which gave the executor a wrongful credit of $490,000, and there was no deny any of this information. There is a factual basis... Mr. Gramps, where can we look to the record to see that Ms. Curry was reading the reports on their behalf before the suit was brought? Okay, I don't know that that's specifically stated. I did question her at her deposition, which I included in my appendix, as to whether she hired a forensic accountant to review Mr. Freiburg's reports. And my deposition is in my appendix at page 878. I thought what you just said was that she was reading them, the reports on their behalf, and having read them, it was on that basis that she, on their behalf, hired the forensic accountant. I think that's implied by the fact... I quoted her deposition testimony in my brief, Your Honor, wherein she said that she submitted all of Mr. Freiburg's financial reports to the estate to Mr. Dempsey in order to figure out what was going on. And it's implied, it's implicit to that, that she had reviewed the reports and needed a forensic accountant to decipher them. So I'm sorry, I don't have at the tip of my... That's okay. Yeah, okay. I beg your pardon. So I don't think there's any doubt that there was a factual basis to sue Mr. Freiburg. Mr. Freiburg admitted to all of this in his deposition. He admitted that he routinely reclassified on the reports that went to the beneficiaries, classified as business expenses or loans, personal expenses that the executor was taking. So that's the first prong of my argument. The second prong of my argument is whether or not there was in fact a legal basis for these claims. And certainly there was. Freiburg knew that the executor was misappropriating estate funds to the detriment of the plaintiffs. In the underlying case, my client... Can you focus on the reliance element? Because I think that's really the piece that's in dispute. What's the evidence supporting reliance? The evidence for reliance is what was referred to previously when your honor questioned plaintiff's counsel. There was testimony from my client, Mr. William Stewart, that after the estate action was instituted and Mr. Freiburg was hired, there was hope that... Because now there was an accountant involved, that things would become clearer, that he forbore on pursuing the estate action aggressively. And it's noted in the Supreme Court decision, Justice Avelis' dissent, that this kind of forbearance can be considered to be a species of reliance. But that as time passed and things were not made more clear, at some point, got the forensic accountant through co-defendant McCurry. So what I think your friend on the other side said in response to that is, that's not reliance on a false statement. So for a fraud claim, there has to be reliance on a false statement that was made. And what you're articulating doesn't sound like it turns on the statement being false or true. It's just reliance on the fact that an accountant was hired. So what's your response to that? Well, my response would be the same as Judge Schotten's in the underlying district court decision. The issue here is whether or not there is a basis for a fraud claim. And the fact that there was some general reliance based on forbearance to prosecute the underlying action, and the fact that ultimately a forensic accountant had to be hired to decipher the reports is sufficient probable cause to grasp and bring misrepresentation claims, whether it be intentional or negligent. So I would refer the court to Judge Schotten's opinion on that issue. The larger issue in this case is, for me, as the stewards counsel, is their reliance on co-defendant McCurry in the drafting of the complaint. What this case comes down to, your honors, in my humble opinion, is the drafting of the complaint and the tailoring of the complaint to a theory of detrimental reliance, and did not consider other causes of action. Now, my clients are laypersons. Attorney Curry was deeply involved in the underlying estate litigation. She was fully familiar with all the facts. There can be no claim that she was not aware of, completely aware of facts, and my clients withheld any information from her. So they relied on her in the preparation, drafting, prosecution of the claim. The claim failed on detrimental reliance, not on the issue of probable cause, your honors. As the plaintiff's counsel correctly points out, they judged the case on the standard for summary judgment. Whether there was a genuine issue of material fact after depositions and discovery, that's not the same standard as probable cause. It's a standard based on a reasonable person's standard. As your honors noted, we have several appellate jurists, state jurists at the appellate and Supreme Court level, who seem to have felt not only was there probable cause, but even greater than that, there were genuine issues of material facts, such that the case should have gone to trial, summary judgment should have been denied. Now, I would note that in Judge Chotteny's- Please wrap up now, Mr. Grant. Mr. Grant, take a last minute to just wrap up, please. Okay. Well, Judge Chotteny noted that it was clear from the record that Mr. Freiberg prevailed in the Supreme Court, not because of William and Jonathan's claims lacked a factual basis, but because of strategic mistakes at earlier stages in the litigation. As shown in the majority and dissenting opinions in the Connecticut Supreme Court decision, plausible theories of liability could have been advanced against Freiberg, but the complaint mistakenly focused on reliance instead of causation. Yes. Okay. So, yeah, I would ask that the court uphold Judge Chotteny's decision. Thank you. Thank you, Mr. Grant. Mr. Ryan. Yes. Thank you, Your Honor. May it please the court, I am Michael Ryan, and I represent the defendant, Sandra Okori. And, Your Honor, the district court properly concluded that there was no genuine issue of material fact as to whether the appellees had probable cause to file and prosecute the lawsuit against Mr. Freiberg. Probable cause is an essential element of the plaintiff's claim for vexatious litigation, and without it, the plaintiff's claim is void. Probable cause is defined as a bona fide belief in the existence of facts essential under the law for the action, and such as would warrant a person of ordinary caution, prudence, and judgment under the circumstances and entertaining it. The standard is what a reasonable person would believe. And probable cause affords attorneys wide latitude to pursue novel and difficult claims, only arguably correct, even if it's very unlikely that their clients will prevail. In this case, Your Honors, Attorney Okori had a bona fide belief that all of the claims were supported by the facts and the law. First, as to the misrepresentation claims, she had a bona fide belief in the existence of facts which would warrant a person of ordinary caution, prudence, and judgment in entertaining it. She had represented William and Jonathan Steward in the Steward v. Steward case and was familiar with all the claims, the pleadings, the discovery, the investigation, testimony, and evidence from that case. She had extensive discussions with John Dempsey, the forensic accountant who reviewed the estate accountings in Mr. Freiberg's records. She was familiar with his report and was present during his testimony at trial in Steward v. Steward. Now, in opposing our motion for summary judgment in the District Court, Mr. Freiberg argued that Attorney Okori could not have had probable cause to bring the claims for misrepresentation because they could not establish the essential element of reliance. Plaintiff premised that argument on the claim that the they claim that Mr. Freiberg concealed from them. However, the premise of the case is First of all, the lawsuit the Stewards brought against their brother in 1993 could not have alleged the same facts that the appellees claimed Freiberg concealed from them because the Steward complaint was filed in 1993 and Mr. Freiberg was not hired until the fall of 1994. The Steward complaint alleged undue influence and events that occurred before it was filed in 1993. The complaint against Mr. Freiberg alleged actions took place when he was the accountant for the estate entities, which was from 1994 to 2001. Obviously, the complaint in the Steward v. Steward case could not have alleged wrongdoing had occurred after it was filed. So, the fact that Steward sued their brother Kenneth before Freiberg was hired does not prove that the appellees did not rely on Freiberg's accountings. Secondly, Your Honor, Attorney Okori had ample basis to believe that her clients had relied on Mr. Freiberg's statements. First of all, they told her that they had received and reviewed copies of Mr. Freiberg's reports and had relied on them. Before she filed the complaint, William conferred with Attorney Okori to review and approve the draft complaint on behalf of himself and Jonathan. She sent them a copy of it once it was filed in state court and also, as Attorney Okori notes in her affidavit, William Steward told her that he and Jonathan had been at a store called the Talbot House in Wilton and had looked at documents Freiberg had prepared and had called Freiberg at Ken's invitation to discuss those reports. There was also this evidence that Attorney Okori was aware of an invoice from Mr. Freiberg to Steward and Sons, one of these state entities, in May of 2000, noting that he billed time for a communication with Jonathan concerning financials and taxes. William Steward's case, in that deposition, he said he saw portions of Freiberg's reports and questioned Freiberg about them. Now, this is the document plaintiff's claims indicate that there could be no reliance because they didn't read the reports. However, they clearly read the reports and at least she had probable cause to believe that from sitting through this deposition in the Steward case. There was also William's testimony before Judge Brennan where Mr. William Freiberg said, I remember looking at the reports from Freiberg, William Steward rather, and Jonathan confirmed this information at his deposition in our case. He said he reviewed the statements when he received them. He looked at them. He said he reviewed the reports and he read them. Over the years, he reviewed the annual reports and he read them. So, based on everything Attorney Okori knew from her handling of the Steward matter and from her discussions with the Stewards and her discussions and communications with Dempsey, she had more than enough basis for alleging that the Stewards relied on Mr. Freiberg's reports. And in addition, as noted earlier, the Appellate Court, two judges of the Appellate Court, and Justice Evely of the Supreme Court found that there was sufficient, there was evidence sufficient to raise an issue of material fact as to the fraud and negligence representation claims. The second issue is whether Attorney Curry had probable cause to bring the action for accounting malpractice. And it's our position that she did definitely have that probable cause. The cause of action requires proof of a duty to conform to a standard of care, deviation from the standard, injury, and a causal connection. She pleaded all of these elements in the complaint, which is attached to her affidavit in the case. She pleaded that Mr. Freiberg had a duty to provide information in accordance with the standard of care. Freiberg failed to conform to the standard of care in a number of ways, many of which aren't even reliance. So she had alleged all those, and she had more than enough basis to believe that they were the intended beneficiaries of the estate. Even in Mr. Freiberg's Rule 56a statement, he agrees with the facts that supported a good faith belief that they were the intended beneficiaries. Specifically... Okay, Mr. Ryan, closing words. Closing words, Your Honor, is we believe there was more than enough probable cause. It's a question of what she believed when she brought and prosecuted the action. She had probable cause to bring all of these, and we would request that the district court's ruling be affirmed. Thank you very much. Thank you, Your Honor. Mr. Gautreaux, you have three minutes of rebuttal. I think you may be on mute. Can you hear me now? Yes. Okay, I had the button the wrong way. Okay, I'll try to be to the point. First of all, in looking at this case, I thought about it in a different way. If you look at what the Supreme Court decided in this case, Mr. Ryan's arguments about what his client says happened are refuted by the actual findings of two courts, the trial court below and then in the underlying action, and the Supreme Court, which clearly find that he testified that both Jonathan and his brother testified, William, that they did not read the reports. The testimony he's talking about is this cagey testimony. I might have seen them or whatever. Nowhere was there any testimony that said they actually saw the content of the report and relied on it. That's made clear in the Supreme Court decision. To raise that issue now really doesn't change the complexion of the case. By the way, the defense that they're using is that Mr. Freiberg must have done a lot of bad things and so there was a reason to sue him. Everything he talks about, by the way, we do dispute his statements concerning what Mr. Freiberg did or didn't do. What Mr. Freiberg testified to is he reported it appropriately, but there isn't a place that's necessarily report on an accounting report stealing or taking money. He was crediting it against the person receiving it so that it would be clearly reflected as being taken by him. That's the context of all that. It's got nothing to do with this case. The reason it doesn't is because the issue is the lawyer pled only, and Mr. Grant, I think, acknowledged that detrimental reliance. What Mr. Ryan was referring to is things that might have been wrong with the reports, but for purposes of causation and damages, the only claim is that there was detrimental reliance on the report. That link was never there. When I thought about it, if you think for a second, would there have been probable cause, let's exclude the appellate court decisions. Client comes into the office and says, I'd like to sue this accountant because the reports that I never read misled me. As an attorney, is there a reasonable attorney who would bring a malpractice case claiming that reports were deficient that were never relied on by the client, never read, never considered, and not dealt with? The answer would be no. You'd be bringing a complaint with an utterly false allegation. The allegations in this complaint were false. They testified to that through the course of the litigation to the extent that the Supreme Court included those statements, paraphrasing them, in its decision. When you look at it that way, the Supreme Court and the appellate court decision don't change anything. It's what a reasonable lawyer would do. The Connecticut law is a little mixed on this. Some cases suggest probable cause has to be... Mr. Votri, you're past your time. You can take a moment to say some closing words. Sure. Let me finish this one thought because I think it is important also. The Connecticut law is a little bit mixed on when you determine probable cause. Most courts say it's at the time of bringing the action, but it's also relevant if you continue prosecuting the action. When this action proceeded and both parties testified that they did not rely on those reports because they did not consider them, at that point, the action should have been withdrawn. Instead, they proceeded on it. Anyway, the court was, I think, in error in granting summary judgment. I think there is a genuine material issue of fact, and I think that point was made by opposing counsel because there are a series of facts concerning reliance. If that's the case, there is a genuine issue of material fact for trial. Under Connecticut law, the issue of probable cause is an issue of fact for the jury. Thank you. Thank you very much. Thank you both. That concludes our oral arguments for this morning. We will reserve decision on this case, and we will also reserve decision on the three cases that we have on submission. The clerk will please adjourn court. Court stands adjourned.